WILLIAM DUTTON, JAMES DUTTON AND JESSE DUTTON, ROBERT DUTTON, TRUITT DUTTON, MANLOVE DUTTON, COMFORT DUTTON AND ELIZABETH DUTTON, which said JESSE, ROBERT, TRUITT, MANLOVE, COMFORT AND ELIZABETH are infants, &c., by WILLIAM DUTTON, their next friend.

*vs.*

PETER R. JACKSON.

*Sussex, March T.* 1840.

Heirs at law relieved, in equity, against a fraudulent conveyance by their ancestor.

A conveyance of land having been made by a husband, pending a proceeding for divorce, but with a reserved possession in the husband and upon a secret trust for his own use, the conveyance being for the purpose of defeating his wife's claim to alimony and the grantee being privy to the fraud,—a court of equity will, after the death of the grantor, hold such conveyance void against his heirs at law.

In such case the deed is not a mere voluntary conveyance, and as such valid and conclusive upon the heirs at law ; but, being fraudulently made and not intended to pass title, it is void, as well against heirs as against creditors.

BILL IN EQUITY TO SET ASIDE A FRAUDULENT DEED.— This bill was filed by the children and heirs at law of Hezekiah Dutton, deceased, in order to set aside a deed executed by Dutton in his lifetime, to wit, on the 15th of April, 1834, conveying to the defendant, for the consideration of $250, certain real estate, worth from $800 to $1000. The bill alleged that the conveyance was made pending a petition for divorce on the part of the wife of Dutton in the Superior Court for Sussex County. On the 19th of April, four days after the execution of the deed, a divorce

was granted by the Court, with a decree allowing to the wife $10 per annum, for alimony out of the real and personal estate of Dutton. The bill alleged that the deed to Jackson was without consideration; that it was fraudulent and void, having been executed in order to defeat the wife of her claim either to dower or to alimony. It further alleged that Hezekiah Dutton remained in possession and offered to sell the lands, the defendant not objecting thereto; that he rented the lands and received the rents until his death, which took place June 14th, 1838. The bill also alleged that Dutton was intemperate and incapable of transacting business; that he was intoxicated when the deed in question was executed. The prayer was that the deed be declared fraudulent and void; that it be delivered up to be cancelled; and that the defendant be restrained by injunction from further prosecuting an action of trespass against the complainants; also from cutting timber on the land in controversy.

The answer of the defendant denied that the conveyance was voluntary and fraudulent, alleging that it was for the consideration of $250, as stated in the deed, and which the defendant alleged was its fair value; that he paid the greater part of the consideration in cash, and for the balance surrendered a note of Dutton which he held; that he had also been obliged to pay a judgment of Peter S. Parker against Dutton, which was a lien on the land conveyed. That Dutton did not, as the bill alleged, continue in possession until his death; but that in the last year of Dutton's lifetime the defendant exercised sundry acts of ownership.

The answer admitted that the defendant did assent to Dutton's selling the lands for $800; and agreed that he would convey them to a purchaser and allow Dutton the surplus of the purchase money after his payments and disbursements should be refunded, and also after some in-

debtedness subsequently contracted by Dutton to the defendant should be paid.. The answer denied all charges of fraud on his part, or knowledge of any fraudulent intention on the part of Dutton. It also denied that Dutton was incapable of transacting business; it admitted that he sometimes drank, but denied that he was drunk at the time of the conveyance.

Depositions were taken on the part of the complainants. They proved the value of the land at various estimates by the witnesses, ranging from $700 to $1000. It was proved that Hezekiah Dutton was of intemperate habits, such as to unfit him for business; and that he was intoxicated at the time of executing this deed; that it was executed shortly previous to the decree for a divorce; that pending the proceeding for a divorce he sought to sell the land to several persons, offering it to one for $250, and proposing to another to give him a deed in order to cover the land and to defeat his wife's claim. It was proved by one witness that sometime after Dutton's wife had applied for a divorce, and before it was granted, the deponent heard Dutton ask the defendant whether, if he made him a deed for the land, his wife would get her dower, and that defendant said he did not think she would; that soon after Dutton told the deponent he had made a deed to Jackson for the land. It was further proved that, after the deed was made, Dutton continued in exclusive possession, received the rents and cut and sold wood with the defendant's knowledge; that the defendant had said he only paid $200 for the land, and on one occasion admitted that, if what he had paid for it were refunded, Dutton ought to have the land again.

The cause came before the Chancellor, at the March Term 1840, for a hearing upon the bill, answer, exhibits and depositions.

*C. G. Ridgely,* for the complainants, relied upon three

grounds for setting aside the deed, viz : 1. Intoxication. 2. *Suggestio falsi* by the defendant in stating to Dutton, as an inducement to the conveyance, that the deed would bar the wife's dower ; and 3. A contemplated fraud upon the wife, in which, as he insisted, the defendant alone was concerned ; that the grantor was not *particeps criminis.*

*E. Wootten,* for the defendant, argued that the complainants have no equity to set aside the deed for a fraud of such nature as is alleged in the bill. If there were any fraud Dutton was himself the guilty party. Upon well settled principles a court of equity would not relieve him against the consequences of his own fraud ; neither will it relieve the complainants, his heirs at law, who, though innocent, are but volunteers, and are affected by the acts of their ancestor. They take representatively, and can claim only such title as the ancestor had. It is otherwise as to creditors, who, in such cases, claim not under the debtor but by a right paramount, which cannot be impaired by his acts. *Roberts on Frauds,*641 ; *Jeremy's Equity,*414 ; 1 *Madd. Ch. Pr.* 207.

JOHNS, JR., CHANCELLOR.

In this case, it appears from the testimony that the condition of the grantor placed him under circumstances peculiarly calculated to render him subject to the fraud and imposition in which he participated. The fraud perpetrated was intended and contrived by both grantor and grantee, to deprive the wife of alimony out of the land granted ; she having instituted legal proceedings to obtain a divorce. The grantee, the present defendant, was privy and party, advising and approving, and at the same time informing the grantor that by the conveyance to him his wife would be defeated of her claim of dower. It also appears the parties did not intend a clear gift or conveyance of the entire interest, but evidently designed to invest the

grantee with the legal title, the grantor retaining the possession and the beneficial interest or control; and that he did, during his life, remain in possession and control of the land, as owner thereof, managing and using the property for his own benefit, without interference or interruption on the part of the grantee. There can be no doubt that in this case, at the time of the execution of the deed, a fraud was intended and perpetrated. Shall the grantee be allowed, under such a deed, to enforce his claim to the fee simple interest or title in the land against the children of the grantor, who claim as heirs at law, when by so doing he will be allowed to take advantage of his own fraudulent act? During the life of the father, he acted not as the person having both the legal and beneficial interest, but evidently in accordance with the understanding and agreement existing, and proved by his own declarations to have subsisted between them. It is not necessary for me, in a case like this, to decide as to the effect of voluntary conveyances. It is true they are void only as to creditors; for a man may give his property away, and it would bind him and all claiming under him. But that is not this case. The character of this transaction is very different. The defendant is relying on his right to retain that which he derived under a fraudulent grant made to him by his own advice; and the question is, shall he, to the prejudice of the children, retain the title thus fraudulently acquired? It does appear to me contrary to every principle of equity to allow such a deed to stand or to avail the party thus lending himself, not only as a willing instrument but as an active and efficient agent in the fraud. It would be allowing that which had its origin and whole foundation in fraud to acquire by time a validity which in its inception it did not possess. The settled rule of law and equity is, that fraud taints and vitiates so thoroughly the whole transaction that it is thereby rendered utterly void. Therefore, I am

of opinion that this deed, being by the parties at the time of its execution contrived for the purpose of perpetrating a fraud, is void; and, although it might be questioned whether the grantor, who was *particeps criminis*, would be permitted to come into a court of equity for relief, as he could not come with clean hands, the same objection does not apply to those claiming under him. 2 *Ves. Jr.* 295. The rule of equity precluding the party, I apprehend, is founded on principles of public policy and is strictly personal, the main scope and design of which would be rendered more effectual by sustaining the legal and equitable title of the heirs of the deceased grantor against the claim of the surviving grantee. For the deed being void for fraud no title ever passed to the defendant; the decree of the Chancellor, therefore, in declaring the transaction fraudulent, only ascertains and announces that which law, as well as equity, settles, viz: that no legal or valid deed ever existed. The power of the Court is not called into action to undo any thing, but simply to determine whether the parties, by the conveyance they attempted to make and execute, mutually intended to perpetrate a fraud; and, if so, the fraud and covin of the parties, not the decree of the Court, makes the instrument void. It is true, during the life of both parties, the equality in guilt may preclude either party from coming into chancery for relief, when there exists no evidence of actual imposition or fraud practiced by the grantee on the grantor; for that appearing would afford good ground for relief to the grantor, as thereby the case would vary, and he could no longer be considered in the light of a *particeps criminis*, but by the advantage taken of his situation and the imposition practiced upon him would be the person injured and defrauded. If the present case will not justify the action of a court of equity in favor of the heirs at law, because it does not appear that Jackson intended to defraud Dutton, although the transaction by both parties is admitted to be done, and

so declared, for a fraudulent purpose, I cannot imagine a case in which, where the grantor is *particeps* in the fraud, the heirs can be relieved. That the heirs should be entitled to relief, upon the strong equity their claim presents, would appear reasonable and just. The reason of the rule of equity which generally excludes a *particeps criminis* cannot apply to the heirs ; they can come with clean hands and claim the judgment of the Court, determining and declaring the fraud ; nor are they, as in the cases of fair, voluntary conveyances, concluded by the law of estoppel. For these reasons let there be a decree declaring the deed fraudulent and void, and also a perpetual injunction.

Decree reversed by the Court of Errors and Appeals, at the June Term, 1840. 3 *Harring. R.* 98.